Opinion delivered May 15, 1889.

No. 6478.

EX PARTE W. M. ROBERTSON.

1. CIVIL AND CRIMINAL CONTEMPT OF COURT.—Criminal contempt of court consists in the doing of an act in disrespect of the court or its process, or which obstructs the administration of justice, or tends to bring the court into disrepute; and such contempt, if committed in a justice of the peace's court, may be punished by the justice of the peace by fine not exceeding twenty-five dollars, and imprisonment not

exceeding one day. Civil contempt of court consists in failure or refusal to perform an act ordered by the court for the benefit of another party.

SAME—CASE STATED.—The relator, who is constable of precinct number three, of Travis county, was charged with the execution of a writ of sequestration sued out of the justice's court. Failing to execute the same, he was proceeded against in the said justice's court by the plaintiff in the writ. Acting under article 4539 of the Revised Statutes, the justice of the peace adjudged the relator guilty of contempt of his court, fined him in the sum of thirty-nine dollars and nineteen cents to inure to the plaintiff in the writ of sequestration, and committed him to jail until payment of said fine and costs. *Held* that the failure and refusal of the relator to execute the writ of sequestration constituted civil contempt of the said justice's court, and that the justice exercised his legal authority in so adjudging him guilty, and in imposing the said fine and committing him pending payment thereof.

3. SAME.—A fine imposed for contempt is not "debt" within the meaning of section 18, of the Bill of Rights, which provides that "no person shall ever be imprisoned for debt."

4. SAME—JUDGMENT AND THE COMMITMENT in this case are both void because they omit the essential recital that it was within the power of the relator, as constable, to execute the writ; and the commitment is void for the further reason that, upon its face, it commits the relator on a fine imposed for criminal contempt. Wherefore the relator is discharged without day.

HABEAS CORPUS on original hearing in the Court of Appeals, on application from Travis.

The opinion discloses the case.

*Carleton & Ruggles*, for the relator

*W. L. Davidson*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. In this case an original writ of habeas corpus was granted, returnable to this court, on the petition of applicant alleging that he is illegally restrained of his liberty by the Sheriff of Travis county acting by virtue of a certain writ of commitment issued by one J. A. Stuart, a justice of the peace in and for precinct No. 3 of Travis county, Texas, on the eighth day of April, 1889. Said order or writ of commitment being in words and figures as follows, to-wit:

"The State of Texas,

To the sheriff of Travis County, Greeting:
Whereas a judgment was rendered by me, J. A. Stuart, a

justice of the peace in precinct No. 3 in the county of Travis, adjudging W. M. Robertson guilty of contempt of court, and a fine of $39.19 was entered against said Robertson, and judgment was by me rendered on the 8th day of April, A. D., 1889, that the State of Texas recover of the said defendant W. M. Robertson the sum of thirty nine and 19–100 dollars, the fine assessed by the court, and all costs amounting to the further sum of 60–100 dollars, these are therefore to command you forthwith to take into custody and keep him, the said W. M. Robertson, until the above fine and costs are paid as provided by law.

Herein fail not, but execute this warrant of comitment as the law directs, and fail not to return the same with your en dorsement thereon, how it was executed.

Given under my hand at office, this the 8th day of April, 1889.

J. A. STUART,
Justice of the Peace,
Precinct No. 3, Travis Co. Texas."

It is claimed that said commitment is illegal and unauthorized by law, and exceeds the limits within which our statutes permit justices of the peace to fine in cases of contempt; the provision of the statute being that "they shall have power to punish any party guilty of a contempt of court by fine not to exceed twenty-five dollars, and by imprisonment not exceeding one day." (Rev. Stat. art. 1541.)

If the fine imposed had been for a criminal contempt this statute would have been applicable and the objection would have been fatal to the proceeding. Such, however, does not appear to have been the nature of the proceeding. It is shown that the applicant Robertson, as constable, was fined by the justice for failing and refusing to execute and return according to law a writ of sequestration issued in a certain civil cause pending in the justice's court, wherein one A. A. Cooper was plaintiff and one E. O. Sanford was defendant; that a motion was made against said constable by the plaintiff Cooper to have him fined for failing to execute said writ, upon the hearing of which the court adjudged him "guilty of a contempt of court for failing and refusing to execute and return said writ," and that he "be fined in the sum of thirty-nine dollars and nineteen cents, which said sum, when collected, shall inure to the benefit of A. A. Cooper, the plaintiff in said cause," and that the "said Robertson be committed to the county jail of Travis county,

Texas, until said sum of thirty-nine dollars and nineteen cents, together with all costs, is paid into this court." This was the judgment upon which the order and writ of commitment set forth above were issued. The justice based his action upon the provisions of article 4539 of the Revised Statutes, which declares that "if any constable shall fail or refuse to execute and return according to law any process, warrant or precept to him lawfully directed and delivered, he shall be fined for a contempt, on motion of the party injured before the court from which such process, warrant or precept issued, in any sum not less than ten dollars nor more than one hundred; with costs, which fine shall be for the benefit of the party injured; and said constable shall have ten days notice of such motion." It seems that all the provisions and requirements of this statute were substantially if not literally observed in the proceedings which resulted in the justice's judgment, but it is insisted for applicant that, whilst it may be conceded that under this statute the justice had the authority to fine the constable, still the statute gives him no authority to commit him to jail as for a contempt until such fine and costs were paid.

Contempts are of two kinds, civil and criminal. "Civil contempts are those *quasi* contempts which consist in failing to do something which the contemnor is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court; while criminal contempts are all those acts in disrespect of the court or of its process, or which obstruct the administration of justice, or tend to bring the court into disrepute," etc. (Rapalje on Contempts, sec. 21.)

Contempts are also classified into direct and constructive contempts. Direct contempts are punishable summarily, while constructive contempts require a different and less summary process. We have already seen that for what may be termed criminal or direct contempts, our statute above quoted (Rev. Stats., art. 1541) expressly provides that the party may be fined and imprisoned.

The question is, the statute (Rev. Stats., art. 4539) being silent as to the imprisonment for constructive or civil contempt, can the court inflict imprisonment as part of the punishment for said character of contempt?

Our Supreme Court, in the case of Edrington v. Pridgham, 65 Texas, 612, which was a case involving a question of civil or constructive contempt, say: "The proceeding for contempt

can properly end only in a judgment of acquittal and discharge or conviction and sentence. The punishment is by fine or im_prisonment, or both. (Rev. Stat., art. 1120; Rapalje on Contempts, sec. 128.) The proceeding is generally regarded as a prosecution for an offense. (Id., sec. 95; Passmore Williamson's case, 26 Pa. St., 7.) We know no authority for awarding in such proceeding, as a softer penalty, or as a means to the same end, a judgment in favor of the private prosecutor for a sum of money to be collected by execution. In some jurisdictions for contempt in civil cases, depriving a litigant of some right, the court is authorized by statute to require the offender to restore the *status quo,* or pay the damages, but the order is enforced by commitment. (Robbins v. Frazier, 5 Heisk., Tenn., 100; In Re. Day, 34 Wis., 638.)"

In his able work on contempts Mr. Rapalje says: "An examination of the authorities, English and American, discloses five different kinds of imprisonment for civil and criminal contempts: 1. Imprisonment in the first instance by way of punishment for a criminal contempt. 2. Imprisonment for the non payment of a fine imposed as such punishment. 3. Imprisonment for non payment of a fine or penalty imposed as a compensation to the person injured by the violation of an order or decree in a civil action. 4. Imprisonment to compel compliance by a party or witness with the requirements of an order or decree of the court; and, 5. Imprisonment for non payment of costs." (Sec. 130.)

Again, the same learned author lays it down as a rule that "where a statute authorizes or prescribes the infliction of a fine as a punishment for contempt of court, it is lawful for the court inflicting the fine to direct that the party stand com mitted until the fine is paid, although there be no specific affirmative grant of power in the statute to make such direction." (Sec. 129, p. 180; citing Fisher v. Hayes, 6 Fed. Rep., 63; Ex Parte Whittendon, 62 Cal., 534.)

In an able article on criminal contempts in the fifth volume of the Criminal Law Magazine, the distinguished writer, Mr. Seymour D. Thompson, says, with regard to imprisonment for the non-payment of a fine imposed as an indemnity to a party: "The principles governing this species of imprisonment appear to be, for the most part, substantially the same as in cases of imprisonment for the non-payment of a fine imposed as a punishment for a criminal contempt;" and with regard to this

latter, he says that "unless otherwise provided by statute, the ordinary form of the judgment is that the party is committed to jail until the fine and costs are paid." A party committed for not paying a fine imposed on him for contempt must be confined within the walls of the prison. (People v. Bennett, 4 Page, N. Y., 282.)

But it is insisted in this proceeding that, the fine and imprisonment inflicted upon the officer being imposed for the purpose of securing and enforcing the payment of a debt due to the plaintiff A. A. Cooper, in the sequestration suit, is in contravention and violative of the eighteenth section of the Bill of Rights of the Constitution, article I, which declares that "no person shall ever be imprisoned for debt."

In the article of Mr. Thompson, above referred to, he says, speaking of this character of fines: "Such a fine is in no sense a civil debt." In Dickson v. The State, 2 Texas, 481, it is said the words "imprisonment for debt" had a well defined and well known meaning, and have never been understood or held to apply to criminal proceedings, nor to imprisonment inflicted as a punishment consequent upon a violation of the laws, and a contumacious refusal to submit to the pecuniary penalty imposed.

At page 174, 5 Criminal Law Magazine, Mr. Thompson says: "Since the abolition of imprisonment for debt in the United States, the idea of those contempts which are termed remedial contempts has come to be the refusal to do something which a party is adjudged to do, and which it is in his power to do. Even in remedial contempts of the mildest character there is, therefore, the essential idea of contumacy, wilful disobedience of orders and decrees made in the administration of justice. This is an offense against the administration of justice and against society. It hence implies criminality. This idea of criminality is so far a necessary ingredient of everything which is called a contempt that every contempt may be said to be a criminal contempt. It is necessary to consider this in order to understand what the courts mean when they say as they do, without discriminating as to the kind of contempt that contempts are crimes or misdemeanors, and that proceedings to punish contempts are criminal proceedings."

From the foregoing discussion we think it apparent, first, that the justice of the peace had statutory authority in this case to impose the fine of thirty-nine dollars and nineteen cents

for the benefit of the plaintiff in the sequestration suit; that, secondly, said fine was also legally imposed as for a contempt of court, the officer having failed and refused to execute the process of the court. (Crow v. The State, 24 Texas, 612.) Thirdly, that, in addition to the fine, the court had also the authority to order and commit the officer to imprisonment until the fine and costs were paid.

The only remaining question for our consideration is whether the judgment, the order, and·the commitment issued by the justice are valid and sufficient to authorize this imprisonment for said contempt.

It is well settled that, to justify the imprisonment of a party adjudged to be in contempt, an order or warrant of commitment of some sort is necessary. (Ex Parte Beaufort, 1 Cranch. U. S. C. C , 456.) .''As to whether the order should contain a statement of the facts found in the proceedings prior to the commitment, the cases are in conflict. Thus, in New York, it is held that it must designate the particular misconduct of which the defendant is convicted. And in California it is laid down that it must state specially all the material facts on which the action of the court is predicated; and, where the commitment is for refusing to obey an order of the court, it must set forth that it is in the power of the person to comply with the order. Again, it has been said that a warrant to commit for contempt, issued by a limited authority, should show that the contempt fell within the limits of that authority, but that, when issued by a superior court of record, the adjudication of contempt may be general, and the particular circumstances need not be set out; that in such a case jurisdiction and regularity will be presumed. Again, it is held in New York that the process of commitment by a surrogate against a guardian for contempt need not recite all the facts necessary to confer jurisdiction. It should show, on its face, that it issued in a proceeding wherein the surrogate had jurisdiction; what was the cause of commitment; what act or duty must be performed, and what expenses paid." (Rapalje, sec. 129.)

''Either the order or judgment finding the defendant guilty of contempt in disobeying the command of the court, or the order of commitment for such contempt, must recite that it was in the defendant's power to perform the required act, or else the commitment will be void." (Id., sec. 137; see also 5 Crim. Law Mag., p. 520, sec. 40; Fischer v. Langbein, 103 N. Y., 84.)

Under these rules with regard to what is necessary to be stated in the judgment and order or writ of commitment, in such cases of constructive contempt as the one in hand, we must hold that an inspection both of the judgment and of the writ of commitment show them each to be wanting in the essentially requisite allegation that it was in the power of the defendant Robertson to perform the act required of him by the writ of sequestration issued to him for execution, to wit, that it was in his power to execute the same. Unless this matter sufficiently appears, it is beyond the jurisdiction of the court to render a judgment for such contempt; and, it being essential to the validity of the judgment, the judgment itself should recite the fact. Failing to recite this essential fact, the judgment is void.

As to the order or writ of commitment, it is open to the further objection that upon its face it shows the imposition of a fine as for a criminal contempt which, ostensibly, the court had no authority to inflict, and fails to recite all the facts necessary to confer jurisdiction upon the court to inflict punishment for a constructive contempt in the failure and refusal of the officer to obey the commands of the court.

Because the judgment finding the officer guilty of contempt, and the writ of commitment ordering his imprisonment are, each and both, void in law, the applicant, W. M. Robertson, is hereby released and discharged from further detention in custody on account of the same, and his discharge is ordered accordingly.

*Ordered accordingly.*