[No. 18566. Department Two. September 25, 1924.]

FIRST NATIONAL BANK OF ENUMCLAW, *Appellant,* v. THE CITY OF PASCO, *Respondent.*[1]

TRIAL (150)—FINDINGS OF FACT—NECESSITY. A decision in writing, filed with the clerk, on the trial of an issue of fact by the court, complies with Rem. Comp. Stat., § 8486, requiring findings of fact and conclusions of law to be separately stated, where it is formal and full.

MUNICIPAL CORPORATIONS (525)—SALE OF BONDS—RECITALS—MISTAKE—LIABILITY FOR FRAUD. A recitation in a local improvement bond that it is one of a series of 1 to 13, when in fact but 11 bonds were issued, does not amount to actual fraud or deceit upon a bank which purchased it in reliance on the representation that it was not the last bond of the series; since the facts concerning the issue were matters of record, and the number issued is subject to fluctuation on payments or redemptions by owners of the property assessed.

SAME (525) — FRAUD (1) — RECITALS IN BONDS — INTENT TO DEFRAUD—BREACH OF CUSTOM. The custom of a bank not to purchase

[1]Reported in 228 Pac. 838.

the last of an issue of municipal bonds cannot be a defense to an action against the city for deceit in misstating the number of bonds issued, in the absence of proof that the city knew the custom.

Appeal from a judgment of the superior court for Franklin county, Truax, J., entered July 17, 1923, in favor of the defendant, dismissing an action for damages for fraud, tried to the court. Affirmed.

*W. E. Heidinger* (*Driscoll & Horrigan,* of counsel), for appellant.

*Edward A. Davis,* for respondent.

FULLERTON, J.—In 1912, the city of Pasco, acting under and in pursuance of the act of the legislature found at Chapter 98 of the Laws of 1911, p. 441 [Rem. Comp. Stat., § 9352], caused certain of its streets to be improved at the expense of the property benefited. The method adopted by the city to meet the cost of the improvement was the second method prescribed in the act, called therein improvement "by bonds of the improvement district." As no question here arises as to the regularity of the preliminary proceedings, it is sufficient to say that an improvement district was created, and an assessment levied on the benefited property, payable in ten annual installments, sufficient in amount to meet the cost of the improvement; the statute being followed in substantial detail.

By the terms of the act under which the improvement was made (Laws of 1911, p. 473, § 50) [Rem. Comp. Stat., § 9403], the owner of property charged with the assessment was given thirty days after the confirmation of the assessment roll to redeem his property from the assessment by paying the full amount thereof without interest. It also provided that any property owner could redeem his property at any time after that period by paying the amount of the assessment thereon with interest to the date of the maturity

of the installment next falling due. The ordinance in this instance did not direct the issuance of bonds in any specific amount, but provided for their issuance in the amount remaining unpaid after the property owners had exercised the privileges granted them in the first of the provisos mentioned. While the cost of the improvement and the amount of the assessment was some $38,000, a sufficient number of the property owners redeemed their property before the bonds were prepared to reduce the amount due to $6,500. In this latter sum the officers of the city prepared and printed bonds. The bonds were in denominations of $500 each, and were numbered from 1 to 13, inclusive. Before the bonds were actually sold, however, certain others of the property owners redeemed their properties from the assessment, so that the city found it unnecessary to issue and sell bonds in excess of $5,500, and bonds in this sum only were actually issued; the bonds so issued being numbered from 1 to 11, inclusive. The statute also provided (Laws of 1911, p. 475, § 54) [Rem. Comp. Stat., § 9407], that "such bonds shall be called in and paid in their numerical order."

The statute further provided (Sec. 52):

"Neither the holder nor owner of any bond issued under the authority of this act shall have any claim therefor against the city by which the same is issued, except from the special assessment made for the improvement for which such bond was issued, but his remedy in case of non-payment, shall be confined to the enforcement of such assessments. A copy of this section shall be plainly written, printed or engraved on each bond so issued." Laws of 1911, p. 474, § 52 [Rem. Comp. Stat., § 9405].

The city caused a copy of this section to be printed on the bonds, and also caused to be printed thereon the following statement:

"This bond is one of a series of thirteen bonds aggregating in all the principal sum of $6,500.00, issued for said local improvement district, all of which bonds are subject to the same terms and conditions as herein expressed."

All of the bonds so issued and sold were called in and paid except the last two, numbered 10 and 11. The cause of the failure to pay these was the exhaustion of the assessment fund. Certain of the owners of the assessed property suffered the general taxes to become delinquent thereon, and the county, through foreclosure proceedings, sold the property in satisfaction of its lien for these general taxes.

The appellant, First National Bank of Enumclaw, through mesne assignments, became the owner of the last two of the bonds issued prior to their maturity. After it became evident that the bonds would not be paid out of the assessment fund, it brought the present action against the city of Pasco to recover in damages to the amount of the bonds, with interest. It is alleged in its complaint, and its officers testified at the trial, that it was deceived and induced to purchase the bonds because of the recitals therein contained to the effect that the bonds were a series of thirteen issued for the same purpose, whereas, in truth and in fact, the bonds were the last of a series of eleven bonds so issued; further alleging that it was the rule of the bank not to purchase the last of any series of bonds issued for public improvement purposes, or closer than fifteen per cent of the entire issue, where the bonds are made payable solely out of a fund created by assessments upon property benefited by the improvement. There is no allegation or proof of intentional bad faith on the part of the city, nor was it alleged or proven that the city had knowledge of this custom on the part of

the bank, nor that it had knowledge that it was the custom generally of dealers in this class of securities not to purchase the last of the serial issues of this class of bonds.

The cause was tried in the court below without the intervention of a jury, and resulted in a dismissal of the action with costs. The trial court made no formal findings of fact and conclusions of law, according to the usual manner in actions of legal cognizance. Its decision was given in the form of a written opinion in which is stated generally the facts found and the conclusions of law reached thereon.

The appellant first contends that the cause must be remanded to the court below for further proceedings for want of proper findings of fact and conclusions of law. The appellant founds its contention upon § 367 of the code (Rem. Comp. Stat.) [P. C. § 8486], which reads as follows:

"Upon the trial of an issue of fact by the court, its decisions shall be given in writing and filed with the clerk. In giving the decision, the facts found and the conclusions of law shall be separately stated. Judgment upon the decision shall be entered accordingly."

That the trial court followed the procedure pointed out by the statute, it, of course, takes no argument to demonstrate. It gave its decision in writing and filed it with the clerk, and caused the written decision to be served upon the attorneys of record of the opposing parties. The only question is whether the decision is as formal and full as the statute requires. In this instance we hold that it is.

Our cases on the question we need not to review. They will be found collected in Remington's Compiled Statutes under the cited section. In those of them where we have remanded the case for further proceed-

ings there was but little attempt to comply with the requirements of the statute. Our general language used in them, and which is here cited as holding the present findings as insufficient, was used by us in an endeavor to formulate a rule which would be sufficient in every instance and thus prevent the question from constantly recurring. Trial judges seemingly will not heed these directions. It is to be regretted that they do not do so, as so to do would lighten the labors of both themselves and of judges of this court. But this court must, when the prescribed formula is not followed, determine the question from the record of the particular case. Following this requirement, we reach the conclusion above announced.

On the merits of the controversy we find no ground for reversing the judgment of the trial court. The claim that it was fraud and deceit to issue bonds reciting on their face that a greater number were issued than were in fact issued, is not well founded. This is a result which could follow in any issue of bonds under the statute, because of the provision which permits a landowner to redeem his property from the assessment lien at any time. Being a provision of the statute, a purchaser of the bonds is as much obligated to take notice of it and of the results that may follow therefrom as he is of any other provision of the statute affecting the issue. Fraud and deceit on the part of public officers arise from concealment, from wrong-doing, from departure from law; it never arises from the result of the operation of public law. Here there was no concealment, no wrong-doing, and no departure from law. All of the acts of the city were matters of public record, and the facts concerning the issue, in so far as the present question is concerned, could have been ascertained by a simple inquiry. The mistaken

recital in the bonds, therefore, cannot furnish a foundation for an action of fraud and deceit.

Nor is it an answer to say that the city should have refused to issue the first of the serial numbers instead of the last. The claim is based on fraud and deceit, not on the claim that the appellant would have been protected had that particular course been followed, and plainly the recitals in the bonds would have been equally false and deceitful had the former course been pursued instead of the latter.

Nor does the custom pleaded by the appellant afford a basis for relief. If the appellant may recover by showing that it was its custom not to purchase the last of a series of a bond issue, or closer than a fixed percentage of the last of the issue, another, more conservative, may recover on the same principle by showing that it was not its custom to purchase closer than a still larger percentage, thus making the city liable for at least a considerable part of the issue, whereas the statute expressly provides that it shall not be liable for any part of it. Moreover, the custom pleaded was not alleged to be the custom of dealers generally in this class of securities, nor was it alleged or proven that the city had knowledge of any such custom. While scienter is not a necessary element in all instances of fraud and deceit where recovery is sought based upon such grounds, it is necessary where recovery is sought for fraud and deceit arising from a breach of a custom.

Our conclusion is that there is no error in the record. The judgment will stand affirmed.

MAIN, C. J., BRIDGES, PEMBERTON, and MITCHELL, JJ., concur.